FILED
JUL 1 7 2006
U.S. DISTRICT COURT
CLARKSBURG, WV 26301

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                              CRIMINAL ACTION NO. 1:06CR14

CLEVELAND BILLER,

    Defendant.

## REPORT AND RECOMMENDATION/OPINION RE: MOTION TO STRIKE COUNT FIVE OF THE INDICTMENT

### I. Procedural History

The Grand Jury returned an indictment against Defendant Cleveland Biller on or about March 7, 2006, charging in Counts One, Two, Three, and Four, that he "did willfully make and subscribe a United States individual income tax return for tax year[s] [1999, 2000, 2001, and 2002, respectively] which w[ere] verified by a written declaration that [they were] made under the penalties of perjury and which he did not believe to be true and correct as to every material matter . . . . in violation of Title 26, U.S.C. § 7206(1);" and charging in Count Five that he "did corruptly obstruct and impede and endeavored to obstruct and impede the due administration of Title 26 of the United States Code, in a way in which he concealed unreported income in the approximate amount of $1,111,494 by committing these and other overt acts:

1)    On or about October 10, 2000, the defendant mailed a false United States individual income tax return for tax year 1999 declaring zero (-0-) taxable income when in fact his correct taxable income was approximately $196,397.

2)    On March 17, 2001, the defendant wrote a letter to the IRS cancelling his first appointment which had been set by the IRS to discuss an IRS audit of his 1998 tax year.

3) On or about March 27, 2001, the defendant sent a multi-page letter to the IRS indicating, among other things, that the IRS has no jurisdiction over a business trust and demanding that the IRS answer many questions before the defendant will cooperate with any audit of his business trust.

4) On or about June 13, 2001, the defendant cancelled his second appointment which had been set by the IRS to discuss his audit.

5) On or about August 14, 2001, the defendant mailed a false United States individual income tax return for tax year 2000 declaring zero (-0-) taxable income whin in fact his correct taxable income was approximately $240,072.

6) On or about March 25, 2002, the defendant cancelled his third appointment which had been set by the IRS to discuss his audit.

7) In or about April of 2002, the defendant mailed a false United States individual income tax return for tax year 2001 declaring $8,164 taxable income when in fact his correct taxable income was approximately $322,221.

8) On or about May 25, 2002, the defendant cancelled his fourth appointment which had been set by the IRS to discuss his audit.

9) On or about July 17, 2002, the defendant sent back information from the IRS with the words, "Refused for fraud," stamped over the requests.

10) On or about July 25, 2002, the defendant met personally at the offices of the IRS, and he provided information to the agents indicating that he believed they did not have authority to receive the information they had summonsed.

11) On or about August 7, 2002, the defendant came in to the IRS office and returned a summons

to the IRS office and again questioned the authority of the IRS to request such information.

12) On or about August 9, 2002, the defendant sent a letter to the IRS cancelling his fifth appointment which had been set by the IRS to discuss his audit.

13) On or about September 13, 2002, the defendant mailed more material to the IRS stating, among other things, that citizens of the United States are not liable for income taxes. The defendant also stated, "We are not and never have been citizens or residents of the geographical United States . . . .."

14) On or about December 18, 2002, the defendant mailed more material to the IRS refusing to produce documents on the basis that such material was, "Refused for Fraud . . ."

15) On or about January 20, 2003, the defendant responded to a notice of the IRS's intent to levy with a mailing claiming, among other thing, ". . . there is no legitimate enforcement power granted to the Internal Revenue Service by Congress."

16) On or about August 9, 2003, the defendant mailed a false United States individual income tax return for tax year 2002 declaring zero (-0-) taxable income when in fact his correct taxable income was approximately $299,282.

17) On or about September 18, 2003, the defendant responded to a tax bill by stating, among other things, that, "We disagree that Assessment authority rest [sic] in IRC [sic]."

In violation of Title 26, United States Code, Section 7212(a)."

## II. Motion to Strike Count Five of the Indictment

On June 12, 2006, Defendant filed his "Motion to Strike Count Five of the Indictment" [Docket Entry 28]. The case was referred to the undersigned for pre-trial motions on May 11, 2006 [Docket Entry 25]. Defendant's Motion to Strike was specifically referred to the undersigned on

June 14, 2006 [Docket Entry 30].

On the 10th day of July 2006, came the Defendant, Cleveland Biller, in person and by Robert Alan Jones and Hunter D. Simmons, his counsel, and also came the United States of America by its Assistant United States Attorney, Robert H. McWilliams, Jr., pursuant to the Order setting hearing [Docket Entry 39].

Thereafter, the undersigned took up the motions referred by the District Court including Defendant's "Motion to Strike Count Five of the Indictment [Docket Entry 28]. Counsel for both parties expressed to the undersigned that there was no evidence to be submitted on this issue, and no further argument beyond that already asserted in the parties' briefs. The undersigned therefore deems this issue submitted on the parties' briefs.

### A. The Parties' Contentions

Defendant contends in his "Motion To Strike Count Five of the Indictment" (Docket Entry 28) that Count Five:

1) "is multiplicitous of counts one, two, three and four of the indictment in that it covers the same behavior, the filing of allegedly false income tax returns for the tax years 1999 thru 2002, that Mr. Biller is accused of in counts one through four, a violation of 26 U.S.C. § 7206(1);"

2) "states as 'overt acts' the cancelling of appointments with the IRS to discuss his audit. These accusations are leveled at behavior that is not criminal in nature and that Mr. Biller was completely within his rights to do;"

3) "Additionally [Count Five states as overt acts] letters that Mr. Biller sent to the IRS that are constitutionally protected under his First Amendment rights;" and

4

4) "The 'overt acts' stated in count five in no way imply 'corrupt or forcible interference' unless questioning the IRS in regard to its actions is somehow violative of the vague language of 26 U.S.C. § 7212(a), in which case Mr. Billers [sic] had no notice as to the alleged illegality of his actions."

The Government contends:

1) "Count Five charges a crime that can be committed without the filing of false tax returns, and it charges a crime that can be committed with the filing of false tax returns *with other acts*. Accordingly, because 'each charged offense requires proof of some fact that the other does not require' it is not multiplicitous to counts one through four."

2) "The language of section 7212(a) is not directed at actions motivated by all 'bad,' 'evil,' or 'improper' purposes; rather, section 7212(a) is directed at efforts to bring about a particular advantage such as impeding the collection of one's taxes, the taxes of another, or the auditing of one's or another's tax records."

3) "When [Defendant] submits his disagreements to the I.R.S. as part of a scheme to corruptly endeavor to interfere with the tax laws, this can constitute evidence of a violation of section 7212(a)."

4) ""[T]he statute must give fair notice to the defendant. Once that is done, then the count is sufficient if it tracks the language of the statute. The statute has been upheld as being free from vagueness . . . . "Because count five tracks the language of a valid statute, that count should not be dismissed.."

### 1. Multiplicity

Defendant first argues that Count Five "is multiplicitous of counts one, two , three, and four

5

of the indictment in that it covers the same behavior, the filing of allegedly false income tax returns for the tax years 1999 thru 2002, that Mr. Biller is accused of in counts one through four, a violation of 26 U.S.C. § 7206(1)." The government contends "Count Five charges a crime that can be committed without the filing of false tax returns, and it charges a crime that can be committed with the filing of false tax returns *with other acts*. Accordingly, because 'each charged offense requires proof of some fact that the other does not require' it is not mulitplicitous to counts one through four."

Defendant is charged in Counts One through Four with violating 26 U.S.C. § 7206(1), which provides:

> Any person who .... [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter ... shall be guilty of a felony ....

Briefly, the United States alleges Defendant violated this statute by filing false income tax returns for the tax years 1999, 2000, 2001, and 2002.

Defendant is charged in Count Five with violating 26 U.S.C. § 7212, which provides, in pertinent part:

> Whoever ... in any other way corruptly ... obstructs or impedes, or endeavors to obstruct or impede, the due administration of [the tax laws], shall, upon conviction thereof, be fined ...."

The United States alleges Defendant violated this statute by, among 17 separately- alleged overt acts, filing the four false returns that are the basis of the charges in counts one through four.

The Fourth Circuit addressed a nearly identical situation in U.S. v. Swanson, 112 F.3d 512 (4th Cir. 1997), an unpublished opinion.[1] In Swanson, the defendant was charged in Counts Two

---

[1] The undersigned has attached a copy of Swanson pursuant to CTA4 Rule 36(c).

through Five with filing four false Employer's Quarterly Federal Tax Returns[2] in violation of §7206(1). He was charged in Count One with "corruptly endeavor[ing] to obstruct and impede the due administration of the internal revenue laws" in violation of 26 U.S.C. § 7212(a).

The Fourth Circuit stated:

> We have defined multiplicity as "the charging of a single offense in several counts. [1 Charles A. Wright, *Federal Practice & Procedure* § 142, at 469 (2d ed. 1982).] The signal danger in multiplicitous indictments is that the defendant may be given multiple sentences for the same offense . . . ." *United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993). Absent clearly contrary legislative intent, "'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" *United States v. Allen*, 13 F.3d 105, 108 (4th Cir. 1993) )citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

Id. The Court then held:

> Under this test, Swanson's conviction under § 7212(a) was not multiplicitous with his convictions under § 7206(1). The elements of a §7206(1) violation are: "(1) the defendant made and subscribed [which includes filing] to a tax return containing a written declaration; (2) the tax return was made under penalties of perjury; (3) the defendant did not believe the return to be true and correct as to every material matter; and (4) the defendant acted willfully." *Aramony*, 88 F.3d at 1382. In contrast, the elements of a § 7212(a) violation are that the defendant: (1) corruptly, (2) endeavored, (3) to obstruct or impede the administration of the Internal Revenue Code. *See* 26 U.S.C. § 7212(a); *United States v. Williams*, 644 F.2d 696, 699 (8th Cir. 1981).
>
> Obviously, each of these offenses requires proof of facts that the other does not. Accordingly, the indictment is not multiplicitous and presents no possible Double Jeopardy problem.

Id. In a footnote, the Court further explained that "willfully" and "corruptly" do not constitute the same element, stating that "[w]illfulness is a voluntary, intentional violation of a known legal duty

---

[2]The undersigned notes §7206 applies to any type of "return, statement, or other document . . . ."

7

(citing Cheek v. U.S., 498 U.S. 192 (1991)), and that "'[c]orruptly,' by contrast, 'describes an act done with an intent to give some advantage inconsistent with the official duty and rights of others. . . .'" Further, "[m]isrepresentation and fraud . . . are paradigm examples of activities done with an intent to gain an improper benefit or advantage." Id. at fn. 2 (Citing U.S. v. Mitchell, 985 F.2d 1275 (4th Cir. 1993).

The undersigned notes that two District Courts within the Fourth Circuit have cited Swanson with approval, both agreeing that the elements of a violation under § 7206(1) differ from the elements of one under § 7212(a). See U.S. v. Toliver, 972 F.Supp. 1030, 81 A.F.T.R. 2d 98-534 (W.D. Va. 1997); U.S. v Armstrong, 974 F.Supp. 528, 83 A.F.T.R. 2d 99-1435 (E.D. Va. 1997). The undersigned agrees with these courts and finds Count Five in the instant case is not multiplicitous of Counts One through Four.

### 2. Overt Acts

Defendant next argues that the "overt acts" stated by the government in Count Five include accusations "leveled at behavior that is not criminal in nature and that Mr. Biller was completely within his rights to do," such as cancelling audit appointments. The Government contends "The language of section 7121(a) is not directed at actions motivated by all 'bad,' 'evil,' or 'improper' purposes; rather, section 7212(a) is directed at efforts to bring about a particular advantage such as impeding the collection of one's taxes, the taxes of another, or the auditing of one's or another's tax records."

In U.S. v. Wilson, 118 F.3d 228 (4th Cir. 1997), the Fourth Circuit stated as follows:

> In order to prove a violation of 26 U.S.C.A. §7212(a), the government must prove that the defendant: 1) corruptly; 2) endeavored; 3) to obstruct or impede the administration of the Internal Revenue Code. *See United States v. Bostian*, 59 F.3d

> 474, 477 (4th Cir. 1995), *cert. denied*, 516 U.S. 1121, 116 S. Ct. 929, 133 L.Ed. 2d 857 (1996); *United States v. Williams*, 644 F.2d 696, 699 (8th Cir. 1981). Wilson contends that the government failed to prove the first element, namely that he had a "corrupt" purpose. We have led that the term "corruptly," as used in the statute, forbids acts committed with the intent to secure an unlawful benefit either for oneself or for another. *See Bostian*, 59 F.3d at 479; *United States v. Mitchell*, 985 F.2d 1275, 1277-79 (4th Cir. 1993). <u>The acts themselves need not be illegal. Even legal actions violate § 7212(a) if the defendant commits them to secure an unlawful benefit for himself or others</u>. *See Bostian*, 59 F.3d at 479.

(Emphasis added). The undersigned therefore finds that the overt acts alleged in Count Five, even if not illegal, and even if separately within Defendant's rights to commit, could violate § 7212, if they were proven to have been done in order to secure an unlawful benefit.

### 3. First Amendment Protection

Defendant similarly argues that the "overt acts" of sending letters to the IRS are "constitutionally protected under his First Amendment rights." The Government contends: "When [Defendant] submits his disagreements to the I.R.S. as part of a scheme to corruptly endeavor to interfere with the tax laws, this can constitute evidence of a violation of section 7212(a)."

Neither party has cited, and the undersigned has not found a Fourth Circuit case directly on point. The Fourth Circuit has stated, however:

> Even in a society of laws, one of the most indispensable freedoms is that to express in the most impassioned terms the most passionate disagreement with the laws themselves, the institutions of, and created by, law, and the individual officials with whom the laws and institutions are entrusted. Without the freedom to criticize that which constrains, there is no freedom at all.
>
> However, while even speech advocating lawlessness has long enjoyed protections under the First Amendment, it is equally well established that speech which, in its effect, is tantamount to legitimately proscribable nonexpressive conduct may itself be legitimately proscribed, punished, or regulated incidentally to the constitutional enforcement of generally applicable statutes.
>
> . . . .

> Were the First Amendment to bar or to limit government regulation of such "speech brigaded with action" . . . , the government would be powerless to protect the public from countless of even the most pernicious criminal acts and civil wrongs. See, e.g., Model Penal Code § 223.4 (extortion or blackmail); id. § 240.2 (threats and other improper influences in official and political matters); id. § 241 (perjury and various cognate crimes); id. § 5.02 and § 2.06(3)(a)(i) (criminal solicitation); 18 U.S.C. § 871 (threatening the life of the President); Model Penal Code § 5.03 (conspiracy); id § 250.4 (harassment); id. § 224.1 (forgery); id § 210.5(2) (successfully soliciting another to commit suicide); id. § 250.3 (public false alarms); and the like. . . .

Rice v. The Paladin Enterprises, Inc., 128 F.3d 233 (4th Cir. 1997).

The Sixth Circuit has discussed § 7212(a) in the context of threats to an IRS agent. U.S. v. Varani, 435 F.2d 758 (6th Cir. 1970). The defendant in Varani sent a letter to the agent, which was introduced into evidence at his trial. The defendant on appeal argued that the letter did not constitute "force or threats of force;" that § 7212 was unconstitutional as applied; and that the letter "was speech protected by the First Amendment." The court noted that the "substantive evil" which Congress sought to prevent in § 7212(a) was not the evil of assault upon or murder of an IRS agent, but "the impeding or obstructing of such an agent's performance of his duty by threats of such assaults." Id. Although Varani dealt with threats under § 7212(a), the court's reasoning applies equally to the "omnibus" clause of § 7212(a) at issue here. The "evil" prohibited in either case is "the impeding or obstructing" of the IRS officer or employee. The court then stated:

> Contrary to the apparent logic of appellant's contention, speech is not protected by the First Amendment when it is the very vehicle of the crime itself." e.g., 18 U.S.C. § 1621 (1964) (Perjury); 18 U.S.C. §§ 201-224 (1964), as amended, (Supp. V, 1969)(Bribery); 18 U.S.C. §§ 871-877 (1964), as amended, (Supp. V, 1969) (Extortion and Threats); 18 U.S.C. §§ 371-372 (1964) (Conspiracy).

The Second Circuit has likewise found that, in a case involving conspiracy to violate tax laws, conduct "was not protected by the First Amendment merely because, in part, it may have involved the use of language," stating:

10

> [W]hen "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376, 88 S. Ct. 1673, 1678; 20 L.Ed.2d 672 (1968).

U.S. v. Rowlee, 899 F.2d 1275 (2nd Cir. 1990).

Further, the Fifth Circuit held in another case involving § 7212(a):

> Where "corruptly" is taken to require an intent to secure an unlawful advantage or benefit, the statute does not infringe on First Amendment guarantees and is not "overbroad." *See Bill Johnson's Restaurants, v. NLRB, 461 U.S. 731, 103 S. Ct. 2161, 76 L.Ed. 2d 277 (1983); Broadrick v. Oklahoma, 413 U.S. 601, 93 S. Ct. 2908, 37 L.Ed.2d 830 (1973).*

U.S. v. Reeves, 752 F.2d 995 (C.A. Tex., 1985).

The undersigned agrees with the above courts and cases and finds that letters written by a defendant may be considered part of "the very act" alleged of impeding or obstructing officers or employees of the IRS under § 7212(a). Here the alleged overt acts that support the violation of the statute combine both speech and nonspeech elements. Rowlee, 899 F.2d 1275. The undersigned therefore finds the alleged overt acts that consist of "speech" need not be stricken from the Indictment due to First Amendment protections.[3] See U.S. v. Varani, 435 F.2d 758.

### 4. Vagueness

Defendant next argues: "The 'overt acts' stated in count five in no way imply 'corrupt or forcible interference' unless questioning the IRS in regard to its actions is somehow violative of the vague language of 26 U.S.C. § 7212(a), in which case Mr. Billers [sic] had no notice as to the alleged illegality of his actions." The government contends: "[T]he statute must give fair notice to the

---

[3]The undersigned does not address whether the letters are ultimately admissible at trial or whether a jury instruction regarding First Amendment rights might be appropriate, as these issues are not before the Court at this time.

11

defendant. Once that is done, then the count is sufficient if it tracks the language of the statute. The statute has been upheld as being free from vagueness . . . . Because count five tracks the language of a valid statute, that count should not be dismissed."

A challenge for vagueness will fail if "reasonable persons" would have known from the language of the statute that "their conduct is at risk." Maynard v. Cartright, 486 U.S. 356, 108 S. Ct. 1853, 100 L.Ed. 2d 372 (1988). A statute can be void for vagueness not only on its face, but as applied. Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

Defendant "does not suggest that 26 U.S.C. § 7212(a) is on its face invalid." (Defendant's Motion at 3). He instead argues that the overt acts alleged by the government in his case "in no way satisfy the required fair notice that [his] contemplated conduct was forbidden." The undersigned disagrees. In U.S. v. Mitchell, 985 F.2d 1275 (4th Cir. 1993), the Fourth Circuit noted "the well-established rule that the omnibus clause of the federal obstruction statutes should be broadly construed." The Court quoted U.S. v. Mitchell, 877 F.2d 294 (4th Cir. 1989) as follows:

> The obstruction statute was drafted with an eye to "the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined."

The Court then noted:

> [T]he expressed intent of the Congress to expand the reach of the statute beyond protection for IRS agents against force to cover threats and intimidation as well, and the inclusion of the omnibus "in any other way" and "the due administration of this title" language encourage a broad rather than narrow construction.

Id. at 1278.

In Reeves, the Fifth Circuit held that:

> To interpret "corruptly" as meaning "with an improper motive or bad or evil purpose" would raise the potential of "overbreadth" in this statute because of the

potential chilling effect on protected activities . . . . Where "corruptly" is taken to require an intent to secure an unlawful advantage or benefit, the statute does not infringe on first amendment guarantees and is not "overbroad."

752 F.2d 995, 998. The Fourth Circuit in Mitchell, defined "corruptly" as requiring an intent to give some advantage inconsistent with the official duty and rights of others . . . .' 985 F.2d at 1278 (citing Reeves). The Mitchell Court also adopted the broad interpretation of the word "corruptly" used by the Eleventh Circuit in U.S. v. Popkin, 943 F.2d 1535 (11th Cir. 1991), which found that the word "corruptly" was used in the statute "to prohibit all activities that seek to thwart the efforts of government officers and employees in executing the laws enacted by Congress." Id. at 1279 (emphasis added). Finally, "Congress was not required to list in the legislative history every conceivable corrupt endeavor to avoid waving the statute's application to one kind of corrupt endeavor." Id. at 1279 (citing U.S. v. Martin, 747 F.2d 1404 (11th Cir. 1984).

For all the above reasons the undersigned finds § 7212 is not unconstitutionally vague as applied to Defendant.

## RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** Defendant's "Motion to Strike Count Five of the Indictment" [Docket Entry 28] be **DENIED.**

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and

Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail an authenticated copy of this Report and Recommendation to counsel of record.

Respectfully submitted this  /7  day of July, 2006.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

112 F.3d 512                                                                                                                Page 1

112 F.3d 512, 1997 WL 225446 (C.A.4 (Va.)), 97-1 USTC P 50,398, 79 A.F.T.R.2d 97-2465
**(Cite as: 112 F.3d 512)**

**H**
NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a " Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA4 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Johnny SWANSON, III, Defendant-Appellant.
**No. 96-4213.**

Argued April 11, 1997.
Decided May 5, 1997.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CR-95-432-A)

ARGUED: Michael S. Lieberman, DiMURO, GINSBERG & LIEBERMAN, P.C., Alexandria, Virginia, for Appellant.
David Glenn Barger, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.
ON BRIEF: Andrew R. Gordon, DiMURO, GINSBERG & LIEBERMAN, P.C., Alexandria, Virginia, for Appellant. Helen F. Fahey, United States Attorney, Scott W. Putney, Special United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Before WILKINSON, Chief Judge, and MICHAEL and MOTZ, Circuit Judges.

OPINION

PER CURIAM:
*1 A jury convicted Johnny Swanson, III, of one count of corruptly endeavoring to obstruct and impede the due administration of internal revenue laws, in violation of 26 U.S.C. § 7212(a) (1994), and four counts of filing false 1988 employment tax returns, in violation of 26 U.S.C. § 7206(1) (1994). The district court ordered the preparation of a presentence report, which indicated that Swanson was responsible for tax losses in excess of $5.4 million and suggested a guideline range of 51 to 63 months. The district court sentenced Swanson to 60 months imprisonment and three years supervised release. Swanson appeals, challenging his convictions and sentences. Finding no reversible error, we affirm.

I.

Swanson's initial and principal challenge is that the applicable statute of limitations barred prosecution of all counts. Swanson presents separate arguments concerning Counts Two through Five and Count One. We address these contentions in order.[FN1]

> FN1. The Government argues that Swanson has waived his limitations defenses because he did not attempt to present them to the jury. Swanson did, however, file a pre-trial motion to dismiss based on the statute of limitations and raised the limitations defense again immediately before trial and at the close of the Government's case. Accordingly, we refuse to find Swanson has waived these claims.

A.

Counts Two through Five allege that Swanson made, signed, and filed four false Employer's Quarterly Federal Tax Returns in violation of 26 U.S.C. § 7206(1). The parties agree that § 7206(1) is governed by a six-year statute of limitations. *See* 26 U.S.C. § 6531.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

112 F.3d 512 Page 2

112 F.3d 512, 1997 WL 225446 (C.A.4 (Va.)), 97-1 USTC P 50,398, 79 A.F.T.R.2d 97-2465
(Cite as: 112 F.3d 512)

Swanson claims that the statute of limitations began to run when he prepared and signed the 1988 tax forms-June 28, 1989. The Government argues that the statute did not begin to run until the forms were filed-October and November 1990. This is a question of law that we review *de novo*.

Section 7206 provides:
Any person who-
(1) *Declaration under penalties of perjury*
Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter ...

...
shall be guilty of a felony....

26 U.S.C. § 7206. The statute itself does not require the filing of a return, only willful making and subscribing under the penalty of perjury. Swanson argues that the statute is therefore violated at the time of signing, and that the statute of limitations begins to run at that time.

Every court to confront the question has held to the contrary. Some have concluded that "[a] violation of 26 U.S.C. § 7206(1) is complete when a taxpayer files a return...." *United States v. Marashi*, 913 F.2d 724, 736 (9th Cir.1990); *see also United States v. Habig*, 390 U.S. 222, 223 (1968) ( "The offenses involved in Counts 4 [violation of § 7201] and 6 [violation of § 7206(2) ] are committed at the time the return is filed."). Others have reasoned that in order to "make" a return, as required by § 7206(1), the return must be filed. *See United States v. Gilkey*, 362 F.Supp. 1069, 1071 (E.D.Pa.1973); *United States v. Horwitz*, 247 F.Supp. 412, 413-14 (N.D.Ill.1965); *see also United States v. Aramony*, 88 F.3d 1369, 1382 (4th Cir.1996) (listing "ma[king] and subscrib[ing]" as an element of a § 7206(1) offense).

*2 We agree with these courts. Whether filing is viewed as a separate implicit, but necessary, element of a § 7206(1) offense or as incorporated in the statutory "making" requirement, there can be no § 7206(1) offense without filing. "Were it otherwise, the individual making the return could substantially shorten the length of the statutory period by subscribing the return months before it was filed and then retain it so the statute of limitations would be running long before the government had any notice of the offense." *Horwitz*, 247 F.Supp. at 414-15. Furthermore, if the signing alone were illegal, "a person [could] be prosecuted for (1) signing a return he never intends to file, or (2) signing a false return but then changing his mind about breaking the law and sending in a correct return instead." *Gilkey*, 362 F.Supp. at 1071.

B.

Swanson's remaining limitations claim involves his conviction under Count One for "corruptly endeavor[ing] to obstruct and impede the due administration of the internal revenue laws" in violation of 26 U.S.C. § 7212(a).

First, Swanson asserts that the length of the statute of limitations governing § 7212(a) is three years while the Government maintains it is six years. The Internal Revenue Code provides a six-year period "for the offense described in section 7212(a) (relating to intimidation of officers and employees of the United States)." 26 U.S.C. § 6531(6) (1994). Swanson argues that this parenthetical limits the reach of § 6531(6) to violations that include " intimidation of officers and employees of the United States." The Government counters that the parenthetical is descriptive and explains what § 7212(a) is, but does not mean that only "intimidation " prosecutions under § 7212(a) enjoy the six-year limitation period. We agree with the Government. As the Ninth Circuit recently concluded after examining the structure of § 6531, "the parenthetical language in § 6531(6) is descriptive, not limiting." *United States v. Workinger*, 90 F.3d 1409, 1414 (9th Cir.1996); *see also United States v. Brennick*, 908 F.Supp. 1004, 1017-18 (D.Mass.1995).

Alternatively, Swanson argues that, even if the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

112 F.3d 512

Page 3

112 F.3d 512, 1997 WL 225446 (C.A.4 (Va.)), 97-1 USTC P 50,398, 79 A.F.T.R.2d 97-2465
**(Cite as: 112 F.3d 512)**

limitations period is six years, his indictment and the evidence at his trial rested on acts that occurred more than six years prior to his October 11, 1995 indictment, *i.e.,* prior to October 11, 1989. The indictment includes the following facts that occurred before October 11, 1989:(1) Swanson changed the name of his business in July 1984 and December 1986 to get new employer identification numbers to avoid paying back taxes; (2) on or about April 13, 1988, Swanson lied to the IRS about whether the Swanson Group had employees and whether it had been sold; (3) on or about July 26, 1989, Swanson prepared false income tax returns for the years 1987 and 1988 for the Swanson Group; (4) on or about August 21, 1989, Swanson prepared false Employer's Quarterly Federal Tax Returns for 1987; and (5) sometime after June 28, 1989, Swanson prepared the false 1988 returns.

**\*3** However, the indictment also alleges one crucial fact that did occur during the limitation period: On or about November 29, 1990, Swanson filed the false 1988 returns. Additionally, the indictment notes that at some time prior to March 2, 1994, Swanson falsely stated that he had mailed and filed some of the 1987 and 1988 tax returns; he also created and submitted falsified documents purporting to be copies of those returns. The indictment further states that between 1987 and the filing date of the indictment (October, 1995) Swanson had destroyed the payroll records for 1987 and 1988. This conduct could have occurred either before or after limitations ran or during both periods.

"[T]he purpose of the criminal statute of limitations is to protect individuals from having to defend conduct of the 'far-distant past.' " *United States v. Blizzard,* 27 F.3d 100, 102 (4th Cir.1994) (quoting *Toussie v. United States,* 397 U.S. 112, 115 (1970) ). For this reason, " 'criminal limitations statutes are to be liberally interpreted in favor of repose.' " *Id.* However, "[s]tatutes of limitations normally begin to run when the crime is complete." *Toussie,* 397 U.S. at 115 (citing *Pendergast v. United States,* 317 U.S. 412, 418 (1943)) (alteration in original); *see also Blizzard,* 27 F.3d at 102 ("[A] statute of limitations normally will begin to run when the crime is complete.").

Because Swanson's offense under § 7212(a) was not completed until he filed his 1988 returns-in November, 1990-well within the limitations period, we reject his claim that his prosecution was barred by the statute of limitations. *See United States v. Ferris,* 807 F.2d 269, 271 (1st Cir.1986) (finding that for the similar violation of tax evasion under 26 U.S.C. § 7201, "it is the date of the latest act of evasion ... that triggers the statute of limitations."); *see also United States v. DiPetto,* 936 F.2d 96, 98 (2d Cir.1991) (concluding that "a section 7201 prosecution involving the failure to file income taxes is timely if commenced within six years of the day of the last act of evasion."); *United States v. Williams,* 928 F.2d 145, 149 (5th Cir.1991) (same).

II.

Swanson next asserts that Count One was multiplicitous with Counts Two through Five. We have defined multiplicity as "the charging of a single offense in several counts.[1 Charles A. Wright, *Federal Practice & Procedure* § 142, at 469 (2d ed.1982).] The signal danger in multiplicitous indictments is that the defendant may be given multiple sentences for the same offense...." *United States v. Burns,* 990 F.2d 1426, 1438 (4th Cir.1993). Absent clearly contrary legislative intent, " 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' " *United States v. Allen,* 13 F.3d 105, 108 (4th Cir.1993) (citing *Blockburger v. United States,* 284 U.S. 299, 304 (1932)).

**\*4** Under this test, Swanson's conviction under § 7212(a) was not multiplicitous with his convictions under § 7206(1). The elements of a § 7206(1) violation are: "(1) the defendant made and subscribed [which includes filing] to a tax return containing a written declaration; (2) the tax return was made under penalties of perjury; (3) the defendant did not believe the return to be true and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

112 F.3d 512                                                                 Page 4

112 F.3d 512, 1997 WL 225446 (C.A.4 (Va.)), 97-1 USTC P 50,398, 79 A.F.T.R.2d 97-2465
(Cite as: 112 F.3d 512)

correct as to every material matter; and (4) the defendant acted willfully." *Aramony*, 88 F.3d at 1382. In contrast, the elements of a § 7212(a) violation are that the defendant: (1) corruptly, (2) endeavored, (3) to obstruct or impede the administration of the Internal Revenue Code. *See* 26 U.S.C. § 7212(a); *United States v. Williams*, 644 F.2d 696, 699 (8th Cir.1981).

Obviously, each of these offenses requires proof of facts that the other does not.[FN2] Accordingly, the indictment is not multiplicitous and presents no possible Double Jeopardy problem.

> FN2. Swanson's claim that "willfully" and "corruptly" constitute the same element is meritless. "Willfulness" is a "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991). " 'Corruptly,' " by contrast, " 'describes an act done with an intent to give some advantage inconsistent with the official duty and rights of others'.... Misrepresentation and fraud ... are paradigm examples of activities done with an intent to gain an improper benefit or advantage." *United States v. Mitchell*, 985 F.2d 1275, 1278 (4th Cir.1993) (citing *United States v. Reeves*, 752 F.2d 995, 998 (5th Cir.1985)).

III.

Swanson also claims that the district court improperly instructed the jury on the definition of "corruptly" under § 7212(a). Swanson did not object to the instruction at trial, and we therefore review for plain error. *See* Fed.R.Crim.P. 52(b). Read as a whole the court's instructions were not plainly erroneous. Indeed, the court correctly defined "corruptly." *See United States v. Mitchell*, 985 F.2d 1275, 1278 (4th Cir.1993).

IV.

Finally, Swanson argues that the district court overstated the tax "loss" he caused for sentencing purposes. This is a factual finding, which we review for clear error. *United States v. Williams*, 977 F.2d 866, 869 (4th Cir.1992). There was no clear error here. The district court adopted the findings in the pre-sentence report that Swanson caused a tax loss of almost $5.5 million. The calculations in the report do not appear to be faulty and the district court was entitled to rely on them. *See United States v. Terry*, 916 F.2d 157, 160-162 (4th Cir.1990). Indeed, as the Government pointed out at sentencing, Swanson also evaded payment of corporate taxes and failed to pay taxes on embezzled income and none of these amounts were included in the loss calculation. In view of this, the district court properly noted that the pre-sentence report's loss figure "is probably a conservative estimate." Accordingly, the district court did not err in sentencing Swanson based on a loss of almost $5.5 million.

V.

For the foregoing reasons, Swanson's convictions and sentences are hereby

*AFFIRMED.*

C.A.4 (Va.),1997.
U.S. v. Swanson
112 F.3d 512, 1997 WL 225446 (C.A.4 (Va.)), 97-1 USTC P 50,398, 79 A.F.T.R.2d 97-2465

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.