IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                CIVIL ACTION NO. 1:06CR14
                                      (Judge Keeley)

CLEVELAND BILLER,

        Defendant.

## MEMORANDUM OPINION

This case came on for trial before the Court on September 26, 27, 28 and 29, 2006, after the defendant, Cleveland Biller ("Biller"), executed a knowing and voluntary waiver of his constitutional right to a trial by jury. At the conclusion of the bench trial, the Court stated that, in accordance with Rule 23 of the Federal Rules of Criminal Procedure, it would issue a written memorandum opinion containing its findings of fact and outlining its reasoning for the disposition of this case. Accordingly, for the reasons that follow, the Court **FINDS** Biller **GUILTY** of the charges set forth in Counts One, Two, Three, Four and Five of the Indictment.

## I.  ALLEGATIONS OF THE INDICTMENT

Counts One through Four of the Indictment charge Biller with the filing of false income tax returns. Specifically, Count One alleges that, on or about October 10, 2000, Biller "did willfully make and subscribe a United States individual income tax return for tax year 1999 which was verified by a written declaration that it

was made under penalties of perjury and which he did not believe to be true and correct as to every material matter in that his return declared zero (-0-) taxable income, when in truth and in fact as he then well knew, his correct taxable income was more accurately approximately $196,397." Similarly, Count Two alleges that, on or about August 14, 2001, Biller submitted a false individual tax return for tax year 2000, declaring zero (-0-) taxable income when his correct taxable income was $240,072. Count Three further alleges that, on or about August 15, 2002, Biller submitted a false individual tax return for tax year 2001, declaring $8,164 in taxable income when his correct taxable income was $322,221. Likewise, Count Four alleges that, on or about August 9, 2003, Biller submitted a false individual tax return for tax year 2002, declaring zero (-0-) taxable income when in fact his correct taxable income was $299,282.

Count Five of the Indictment charges Biller with corruptly obstructing and impeding and endeavoring to obstruct and impede the due administration of the Internal Revenue Code. Specifically, Count Five alleges that between late 1996 and mid-September, 2003, Biller "did corruptly obstruct and impede or endeavored to obstruct and impede the due administration of Title 26 of the United States Code, in a way in which he concealed unreported income in the

---

---

approximate amount of $1,111,494" by committing various overt acts.

 Count Five sets forth seventeen overt acts allegedly committed by Biller, but states that the overt acts committed by Biller were not limited to those expressly set forth in the Indictment.   This opinion discusses the applicable law and the evidence introduced at trial with respect to each of the counts in the Indictment.

## II. ANALYSIS

### A. Counts One through Four- Filing False Tax Returns

Counts One through Four of the Indictment allege that Biller violated 26 U.S.C. § 7206(1) by filing false tax returns for tax years 1999, 2000, 2001 and 2002.   In order to convict Biller of each charge of filing a false tax return, the Government must prove the following elements beyond a reasonable doubt:

> **First**, Biller made and signed a tax return for the year in question that was false as to a material matter;
>
> **Second**, Biller's tax return contained a written declaration that it was signed under the penalty of perjury;
>
> **Third**, Biller did not believe the return to be true and correct as to the material matters charged in the indictment; and
>
> **Four**, Biller made, or caused to be made, and signed his tax return willfully.

United States v. Bishop, 412 U.S. 346 (1972). The evidence introduced by the Government at trial clearly satisfies all four elements with respect to each count of filing a false tax return.

**1. False As To A Material Matter**

Biller does not dispute that he obtained accountants through The Aegis Company ("Aegis") to prepare his personal federal income tax returns for tax years 1999 through 2002 and that he signed each tax return before filing it with the Internal Revenue Service ("I.R.S"). Therefore, with respect to element one, the only issue is whether Biller's tax returns were false as to any material matter. False information is material if it had a natural tendency to influence or was capable of influencing or affecting the ability of the IRS to audit or verify the accuracy of the tax return or a related return. United States v. Gaudin, 515 U.S. 506 (1995). Information held to be material includes false statements relating to gross income. United States v. Engle, 458 F.2d 1017, 1020 (8th Cir. 1972).

Biller contends that he relied on the computations given to him by professionals utilizing Aegis's business trust system, and, therefore, argues that it was perfectly reasonable for him to believe that the tax returns his accountant prepared and that he signed were correct in every respect. However, Biller's knowledge

4

or intent are not addressed in the first element of the charge of filing false tax returns; rather, they are issues that are addressed in elements three and four. Therefore, as to the first element, the Court must look objectively at the tax returns prepared on behalf of Biller and signed by him to determine whether they were "false as to a material matter."

At trial, the Government introduced Biller's 1040 personal federal income tax returns for tax years 1999, 2000, 2001, and 2002, as well as his 1040X amended personal federal income tax returns for those same tax years. (See Gov. Exs. 1-4; 5-8.) With respect to Count One, Biller reported no taxable income on his 1040 personal federal income tax return for tax year 1999, but then reported $196,397 in taxable income for that year on his 1040X amended return. (See Gov. Exs. 1 & 5). With respect to Count Two, he reported no taxable income on his 1040 personal federal income tax return for tax year 2000, but then reported $240,072 in taxable income for that year on his 1040X amended tax return. (See Gov. Exs. 2 & 6). With respect to Count Three, Biller reported $8,164 in taxable income on his 1040 personal federal income tax return for 2001, but then reported $322,211 in taxable income for that year on his 1040X amended return. (See Gov. Exs. 3 & 7). With respect to Count Four, he reported no taxable income on his 1040

personal federal income tax return for tax year 2002, but then reported $299,282 in taxable income for that year on his 1040X amended return. (<u>See</u> Gov. Exs. 4 & 8).

A comparison of Biller's original tax return submitted for each tax year and the amended tax return he subsequently filed for each tax year establishes beyond a reasonable doubt that Biller's 1040 personal federal income tax returns for tax years 1999, 2000, 2001, and 2002 were false as to a material matter. Specifically, Biller consistently underreported his taxable income on each of his 1040 personal federal income tax returns. Accordingly, the Court finds that the Government has met its burden with respect to the first element for each charge of filing a false tax return.

**2. Written Declaration/Signed Under Penalty of Perjury**

Biller's 1040 personal federal income tax returns for tax years 1999, 2000, 2001, and 2002 (Gov. Exs. 1-4) each contained a declaration that the return had been made under the penalty of perjury. This declaration was located immediately above Biller's signature on each tax return. (<u>See</u> <u>Id.</u>) Government Exhibits 1 through 4 were admitted into evidence without objection by Biller at trial. Therefore, it is undisputed that Biller signed a tax return for each year that contained a written declaration that it was made under the penalties of perjury. Accordingly, the Court

finds that the Government has met its burden with regard to the second element for each count of filing a false tax return.

### 3. Knowledge

With respect to the third element, the Government must prove beyond a reasonable doubt that "[t]he defendant did not believe the return to be true and correct as to the material matters charged in the indictment." Simply, the Government must prove that Biller filed his federal income tax returns for tax years 1999 through 2002, knowing that they were false with respect to his taxable income. United States v. Pomponio, 429 U.S. 10 (1976); United States v. Barrilleaux, 746 F.2d 254, 256 (5th Cir. 1984). "Knowingly," means that the act was done voluntarily and intentionally and not because of ignorance, mistake or accident.

At trial, Tamala Devericks ("Devericks") testified that she reviewed at least 100 pages of Biller's I.R.S. records. Based on her review, she testified that Biller reported $97,074 in taxable income for tax year 1993, $137,584 in taxable income for tax year 1995, and $82,141 in taxable income for tax year 1996. It was only after purchasing the Aegis business trust system that Biller reported zero taxable income for tax years 1998, 1999, 2000, and 2002. (See Gov. Exs. 1, 2, 4 and 36). Similarly, Biller reported only $8,164 in taxable income for tax year 2001. (See Gov. Ex. 3).

7

This comparative evidence establishes that Biller consistently reported significant taxable income for may tax years, and only dramatically decreased his reported taxable income after he began utilizing the Aegis business trust system.  According to Biller's testimony at trial, although his purpose in purchasing the Aegis business trust system had been to protect his assets, he also realized a significant reduction in his income tax liabilities during the period in question.  Nevertheless, based on the representations made to him by Aegis representatives, he contends that he had a good faith belief that this reduction was a deferral of income taxes rather than an elimination of taxes.

The Court must consider the reasonableness of Biller's belief when determining whether he actually held such a belief and acted upon it.  United States v. Pensyl, 387 F.3d 456, 459, n. 1 (6th Cir. 2004).  The more farfetched the belief is, the less likely it is that a person actually held or would act on that belief. Id. Biller holds a bachelor of science degree in engineering and a master's degree in forestry and worked for the United States Forest Service for 26 years.  Just prior to his retirement from the Forest Service, he became involved in the rental business in Morgantown, West Virginia and owns approximately 35 rental properties.  It can

be inferred from this evidence that Biller is a businessman who has experience in filing both personal and business tax returns.

Although Biller has no training in accounting or tax preparation, the Court finds that no reasonable person with Biller's tax history of reporting approximately $100,000 in taxable income for several years could in good faith believe his taxable income would legitimately decrease to zero simply by establishing a business trust. Considering the totality of the evidence, it is not credible that Biller in good faith believed that the taxable income on his 1040 personal federal income tax returns for tax years 1999, 2000, 2001, and 2002 was true and correct. Therefore, the Court concludes that the Government has met its burden of proof on the third element for each count of filing a false tax return by establishing beyond a reasonable doubt that Biller knew his tax returns were false as to his taxable income.

### 4. Willfulness

In order to convict Biller of filing false tax returns, the Government must also establish beyond a reasonable doubt that he acted willfully as charged in the Indictment. In <u>Cheek v. United States</u>, 498 U.S. 192, 201 (1991), the United States Supreme Court held:

**MEMORANDUM OPINION**

>         Willfulness, as construed by our prior
>         decisions in criminal tax cases, requires the
>         Government to prove that the law imposed a
>         duty on the defendant, that the defendant knew
>         of this duty, and that he voluntarily and
>         intentionally violated that duty.

Willfulness is a question of fact that is to be determined by consideration of all the facts and circumstances established by the evidence. Id.; United States v. Miller, 634 F.2d 1134, 1135 (8th Cir. 1980).

## I.

Various circumstances may indicate willfulness. For example, the filing of several amended tax returns, along with other conduct, bears on the defendant's state of mind. Santopiertro v. United States, 948 F.Supp. 145, 154 (D.Conn. 1996). Furthermore, a defendant's pattern of under-reporting large amounts of income may give rise to an inference of willfulness. Escobar v. United States, 388 F.2d 661, 666 (5th Cir. 1967); United States v. Vannelli, 595 F.2d 402 (8th Cir. 1979). Likewise, willfulness may be inferred from the repeated omission of certain items of income. United States v. Allen, 551 F.2d 208, 210 (8th Cir. 1977); United States v. Tager, 479 F.2d 120, 122 (10th Cir. 1973).

At trial, the evidence established that Biller amended several of his personal federal income tax returns to report significant taxable income that was omitted from his original returns for tax

years 1999, 2000, 2001, and 2002. (<u>See</u> Gov. Exs. 5-8).   As established by his amended tax returns, Biller failed to report over $1 million in taxable income for those tax years. (<u>See</u> Gov. Exs. 1-8).  Moreover, for three of the four tax years in question, Biller reported zero taxable income. (<u>See</u> Gov. Exs. 1, 2 & 4).

Interestingly, Biller filed all of his amended federal income tax returns within a three-month period in early 2004. (<u>See</u> Gov. Exs. 5-8).  He places great emphasis on the fact that he filed the amended returns prior to being indicted. However, I.R.S. Agent Ron Garrison testified at trial that he was assigned to perform a civil audit on Biller's tax returns in early 2001 and began requesting information from Biller at that time.(<u>See</u> Gov. Ex. 51). Furthermore, I.R.S. Agent Susan Harper ("Harper") testified that she was assigned the civil audit of Biller in March, 2002 and continued to request information from Biller after receiving that assignment. (<u>See</u> Gov. Ex. 14).

Both Garrison and Harper testified that Biller failed to produce any requested information and consistently cancelled meetings scheduled by the I.R.S.  Harper also testified that she ultimately referred Biller for criminal investigation in early 2003 when he continued to fail to cooperate with the I.R.S. concerning the civil audit.

<u>**MEMORANDUM OPINION**</u>

Biller's amended returns were filed three years after the I.R.S. informed him of the civil audit, and over a year after the I.R.S. commenced a criminal investigation of him. Considering the whole of the evidence, the Court can reasonably infer that a person who had made negligent errors on his tax returns would have fully cooperated with the I.R.S. and expeditiously amended his returns to correct those mistakes. Likewise, it can also be inferred from the timing of Biller's amended returns that he was fully aware of his illegal conduct and the amendments were a last minute play to avoid criminal prosecution.

II.

The Court recognizes that the filing of an amended income tax return alone cannot establish willfulness on the part of a defendant. In determining whether Biller willfully filed false tax returns, however, the Court may also look to whether there is evidence that the defendant was "willfully blind." <u>United States.</u> <u>v. Martin</u>, 773 F.2d 579, 584 (4th Cir. 1985). Biller cannot be found guilty if, at bottom, all the evidence proves is a mistake, or even careless disregard on his part in filing the false tax returns. <u>Id.</u> The element of intent is proven, however, if the evidence shows that Biller deliberately and purposely closed his

eyes to avoid knowing that the Aegis business trust system was fraudulent and his tax returns were false.   <u>Id.</u>

At trial, the Government offered evidence that, prior to filing any of the 1040 personal federal income tax returns at issue in Counts One through Four of the Indictment, Biller was on notice that his business trust system was riddled with fraud. Specifically, it introduced a March 20, 2000 letter to Biller from Michael A. Vallone, Executive Director of The Aegis Company, stating that, after evaluating Biller's arrangement of business entities, Aegis had discovered "several serious — even fatal errors to the design and execution of the above described system." (<u>See</u> Gov. Ex. 34). Government Exhibit 34 states that the five significant issues expressly described in the letter are "more than sufficient to destroy the effectiveness of the system." (<u>Id</u>.)

The ultimate conclusion reached by Aegis in the letter is that Biller's arrangement of business entities was "fatally flawed" and needed "immediate correction." (<u>Id</u>.) Throughout, the letter stated that the fatal errors transformed the whole transaction from lawful to fraudulent. (<u>Id</u>.) Significantly, this letter was sent by Aegis to Biller seven months before Biller filed his 1040 personal federal income tax return for tax year 1999. (<u>See</u> <u>Gov</u>. Ex. 1 & 34).

At trial, Biller denied ever receiving Vallone's March 23,

13

2000 letter and pointed out that the letter was mis-addressed to Rt. 4, Box 258-A, Morgantown, West Virginia, 26505. Biller placed great emphasis on the fact that he lived at Box 358-A and that, on a rural route, Box 258-A would be at least 12 to 15 miles away from his house. However, testimony at trial established that the Government had recovered Exhibit 34 from Biller's file during the execution of a search warrant at the office of his accountant, Wilson Graham ("Graham"). Graham had not been copied on the March 23, 2000 letter from Aegis to Biller (<u>see</u> Gov. Ex. 34), yet Biller conceded that a note paper-clipped to the Aegis letter found in Graham's records was in his handwriting. That note stated:

> Will
> Here is a copy of paper work from Aegis.
> Let me know what you think of the deal.
> Thanks
> Cleve

(<u>See</u> Gov. Ex. 34).

Based on evidence offered by the Government at trial, the conclusion is inescapable that Biller not only received the March 23, 2000 letter from Aegis but forwarded it to his accountant, Graham, seeking his advice. Therefore, the Court finds that Biller's testimony concerning the letter is not credible and that the evidence concerning the March 23, 2000 letter from Aegis

establishes that Biller willfully filed false tax returns for tax years 1999, 2000, 2001 and 2002.

Although he denied receiving Government Exhibit 34 from Aegis, Biller testified that, had he received it, he would have rejected its contents because it encouraged him to illegally back-date his foreign trust into an "aged" trust and also appeared to have been sent solely for the purpose of soliciting more funds for Aegis. Furthermore, Biller stated that he would not have relied on the same people who got him into trouble with the I.R.S. However, despite being on notice that he was being audited by the I.R.S., Biller continued to rely on the advice of accountants to whom he had been referred by Aegis- those same individuals he stated he would not have relied on with respect to the warnings set forth in the Aegis letter.

At trial, the evidence established beyond a reasonable doubt that the Aegis accountant and financial advisor were the only individuals who consistently advised Biller that the trusts were legal, but that no one from Aegis defended this position on behalf of Biller before the I.R.S. An example of that evidence is instructive. On June 21, 2001, Scott W. Gross ("Gross"), an attorney to whom Biller had been referred by Aegis and whom Biller retained, sent a letter (Gov. Ex. 33) to the I.R.S. stating he

15

believed the I.R.S. was contemplating a criminal action against Biller and seeking immunity from civil or criminal actions for Biller in exchange for his cooperation.  Nowhere in that letter does Gross defend the legality of Biller's business trust; rather, he declares that his client never intended to violate any law or regulation of the United States.

Although Biller testified that he did not ask Gross to seek immunity for him from the I.R.S., it can be inferred from the entirety of Gross' letter that he had discussed the situation with Biller beforehand and was acting with his authority.  Moreover, despite the fact that his attorney was attempting to obtain immunity for him, Biller continued to utilize the Aegis business trust system and filed his 1040 personal federal income tax returns for tax years 2000, 2001, and 2002 based on that trust.

Biller testified that, because he was not satisfied with counsel recommended by Aegis, in January, 2003, he retained attorney David Jividen ("Jividen") at the suggestion of the firm of Gianola, Barnum & Wigal, L.C. Thus, on February 19, 2003, Jividen sent a letter to the United States Attorney's Office inquiring as to whether Biller's matter had been designated for a grand jury investigation or if any attorney at the Department of Justice had been assigned to the matter. (See Gov. Ex. 49). Jividen's billing

statement also establishes that, in February, 2003, he conducted research concerning the viability and legality of the Aegis business trust system for Biller.  (See Def. Ex. 44).  Biller admitted at trial that, in early 2003, Jividen advised him the Aegis trust system was fraudulent and that he needed to immediately amend his tax returns and pay the taxes owed.  Ultimately, in a letter dated June 5, 2003, Jividen advised Biller that he had talked with the criminal division of the United States Attorney's Office and that the prosecutor was not interested in Biller's cooperation and would only entertain a plea to a felony, jail time, and payment of all back taxes. (See Gov. Ex. 41).

Even after Jividen advised Biller that his trust was fraudulent and that he was under criminal investigation and potentially facing a penalty of imprisonment, Biller continued to utilize the Aegis business trust system, had an Aegis accountant prepare his 1040 personal federal income tax return for tax year 2002, and filed that return with the I.R.S based on the Aegis system. Biller testified that he continued to use Aegis representatives and file tax returns based on the Aegis business trust in filing his 2002 tax returns because he had not yet found a competent tax attorney to defend his trust.

Biller testified that he continued to search for someone to defend his trust because, if forced to collapse the trust, he would have been left in financial ruin.  This admission is extremely significant; one can reasonably infer from it that Biller had knowledge that his business trust was fatally flawed, that the reduction in his taxable income based on the Aegis business trust was illegal, and that his tax returns were false.  Nevertheless, he closed his eyes to this knowledge and intentionally filed false tax returns with the I.R.S. to protect his assets and stave off what he believed would be his financial ruin.

Thus, the Court finds that The Aegis Company put Biller on notice in March, 2000 that his trust was fatally flawed and, that, despite this knowledge, Biller willfully continued filing false tax returns.  The weight of the evidence establishes beyond a reasonable doubt that Biller acted willfully as alleged in Counts One through Four of the Indictment.

**5. Good Faith Defense**

Biller testified that he had a good faith belief that the Aegis business trust system was legal and that his tax returns were correct in every respect based on the advice of his counsel and accountants.  Good faith is a complete defense to the charge of filing a false tax return because it is inconsistent the wilful

intent element of the charge.  Specifically, if a person in good faith believes that an income tax return he prepared truthfully reports the taxable income and allowable deductions of the taxpayer under the internal revenue laws, that person cannot be guilty of willfully preparing or presenting, or causing to be prepared or presented, a false or fraudulent tax return.  United States v. Pensyl, 387 F.3d 456, 459 (6th Cir. 2004); United States v. Kouba, 822 F.2d 768, 771 (8th Cir. 1987).  Because the burden of proof remains on the Government, it must negate Biller's claim that he had a good faith belief that he was not violating any of the provisions of the tax laws. Cheek v. United States, 498 U.S. at 202.

I.

At trial, Biller testified that he became socially acquainted with James "Rocky" Gianola ("Gianola") approximately 12 to 15 years ago and ultimately established an attorney-client relationship with him.  Biller further testified that, in approximately 1995 or early 1996, he asked Gianola to direct him to a legitimate asset protection program that could shield him from liability to potential litigants who might be injured on his rental properties. According to Biller, Gianola suggested he look into the Aegis business trust system being promoted by an individual in Morgantown

named Booker Walton ("Walton").  Biller testified that he asked Gianola whether such a business trust system was legal and whether the trust would create any problems with the I.R.S.  According to Biller, Gianola assured him that the business trust system was legal in the State of West Virginia.

Through Walton, Biller met an accountant, James Binge ("Binge"), who took over his accounting and tax preparation beginning with the 1996 tax year.  Biller testified that Walton later introduced him to another accountant, Wilson Graham ("Graham"), after Binge came under investigation by the Securities and Exchange Commission ("SEC").  Graham prepared Biller's personal tax returns for tax years 1999 through 2002.

After being notified in early 2001 that he was under civil audit by the I.R.S., Biller testified he sought advice from Graham, who assured him Aegis would represent him and defend his business trust before the I.R.S.  Biller stated that he was ultimately referred to an attorney, Scott Gross, who wrote to the I.R.S. on his behalf in the Spring of 2001.  As noted earlier, however, Gross failed to defend the trust on Biller's behalf before the I.R.S. and resigned as his counsel prior to filing a petition with the Tax Court.

In late 2002, Biller returned to Gianola's law firm and sought advice from Gianola's partner, Gary Wigal ("Wigal"), regarding his business trusts.   Biller testified that Wigal assured him his trusts were legal, but that, if he intended to continue sending "tax protestor" letters to the I.R.S., he should seek advice from a tax attorney. Wigal recommended David Jividen.  As noted earlier, although Biller did retain Jividen, he continued his same course of conduct against Jividen's advice.

II.

Here, Biller's good faith argument is based on the purported advice he received from his attorneys and accountants.   To be entitled to the advice of counsel defense, however, Biller must have disclosed all relevant facts to his counsel. <u>United States v. Butler</u>, 211 F.3d 826, 833 (4th Cir. 2000).  Moreover, he must show that he actually relied on the professional advice, that his reliance was in good faith and that he followed the advice without deviation. <u>United States v. Custer Channel Wing Corp.</u>, 376 F.2d 675, 683 n. 15 (4th Cir. 1967).

At trial, Gianola testified that he did not draft Biller's trust documents.   Moreover, he readily conceded that he did not read every trust package that Walton prepared and forwarded to his office for his signature. Rather, Gianola testified that he

21

reviewed only the initial Aegis trust Walton presented to him and opined that the trust was legal in West Virginia.  Gianola further testified that he had no knowledge about how the trusts operated, and, therefore, never provided any tax advice to Biller.

At bottom, Gianola testified that his role regarding the Aegis business trusts was limited to that of a straw party.  His limited role in the formation of Biller's business trust is evidenced by the uncontradicted fact that he charged only a $750 straw party fee.  Had he actually provided legal advice about the business trust, Gianola testified that he would have charged additional legal fees.  Nevertheless, Gianola did have an attorney-client relationship with Biller, which distinguishes Biller from the other clients of Aegis for whom Gianola acted as a straw party. Furthermore, Gianola may have had a motive to testify to a limited involvement in the establishment of Biller's business trust based on possible fear of criminal prosecution.  Despite this, the Court finds that Gianola's testimony concerning the limited advice he provided to Biller with respect to the Aegis trust is credible.

Although Biller asserts that he relied on Gianola's advice, Gianola testified that he was not competent to give tax advice and advised Biller only that business trusts were legal in the State of West Virginia.  Biller, however, testified that Gianola's opinion

encompassed the tax consequences of using the trust because Biller had expressly stated to Gianola that he did not want problems with the I.R.S.  At a minimum, Biller contends he had a good faith belief that Gianola's opinion extended to any tax consequences of the trust.

The evidence as a whole, however, does not establish that Gianola instructed Biller that he could defer any tax consequences as a result of using the Aegis trust system. At trial, the Government introduced evidence that Biller did not comply with the terms of his business trust.  This evidence is  significant for two reasons.  First, Biller cannot rely on the advice of his counsel if he did not fully inform counsel of his intended use and then failed to follow counsel's advice without variation. United States v. Custer Channel Wing Corp., 376 F.2d 675, 683 n. 15 (4th Cir. 1967).  Second, if Gianola's knowledge was limited to the contents of the trust documents and did not include Biller's intended uses for the trust by Biller, it would be unreasonable to infer that Gianola's opinion that the trust was legal in West Virginia extended to Biller's use of the trust to eliminate tax consequences.

Gianola testified that he concluded that the Aegis business trust was a legal trust in West Virginia because it met the

essential elements of a valid trust with paragraphs that prohibited self-dealing and required an independent trustee. He further testified that he was the initial director for each trust, but would then resign without knowledge of the next director's identity. There is no evidence that Biller told Gianola he intended to become both the director and the beneficiary of his trust. Moreover, at trial, Biller did not dispute that he was both the director and beneficiary of his business trust.

Therefore, because he did not abide by the terms of the trust, Biller is not entitled to rely on Gianola's opinion that the Aegis business trust was legal in West Virginia. Furthermore, because he did not fully inform Gianola about his intended use of the Aegis trust, Biller cannot in good faith rely on Gianola's advice that the trust system was legal and claim that Gianola's advice extended to the effect of the trust on his income taxes.

In addition, a defendant cannot hide behind counsel's advice to avoid criminal prosecution if he is advised by counsel that a contemplated course of action is legal, but he subsequently discovers counsel's advice is incorrect or discovers reason to doubt the advice. United States v. Benson, 941 F.2d 598, 614 (7th Cir. 1991). In this case, Biller did not in good faith rely on the advice of the Aegis accountants and financial advisor that the

Aegis trust was legal because he was put on notice first by The Aegis Company in early 2000 and later by Jividen in early 2003 that his business trust system was fraudulent. Moreover, in 2001, Gross, an attorney to whom Biller had been referred by Aegis, did not defend Biller's trust, and, instead, sought immunity for Biller from the IRS from civil and criminal liability. Therefore, the Court finds that the Government has met its burden of proof to negate Biller's good faith defense to the element of willfulness.

Because it produced sufficient evidence to establish each of the four elements and to negate Biller's advice of counsel defense, the Court concludes that the Government proved, beyond a reasonable doubt, that Biller knowingly and willfully filed false tax returns for tax years 1999, 2000, 2001, and 2002. Accordingly, it finds Biller guilty of the charges contained in Counts One, Two, Three, and Four of the Indictment.

## B. Count Five- Corruptly Endeavored To Obstruct or Impede The Due Administration of the Internal Revenue Code

Count Five of the Indictment alleges that Biller violated 26 U.S.C. § 7212(a) by corruptly obstructing and impeding and endeavoring to obstruct and impede the due administration of the Internal Revenue Code. In order for Biller to be found guilty of the charge of obstruction of the due administration of the tax

code, the Government must prove beyond a reasonable doubt that Biller in any way corruptly endeavored to obstruct or impede the due administration of the Internal Revenue Code. <u>United States v. Williams</u>, 644 F.2d 696, 699 (8th Cir. 1981). The word "corruptly," means that the act was done with the intent to secure an unlawful benefit either for oneself or for another. <u>United States v. Wilson</u>, 118 F.3d 228, 234 (4th Cir. 1997).

As previously discussed in detail, at trial, the Government proved beyond a reasonable doubt that, Biller was aware that fatal errors in his business trust system transformed the whole transaction from lawful to fraudulent in March, 2000. Furthermore, as early as 2001, Biller was on notice that the I.R.S. was contemplating pursuing criminal charges against him and no counsel would defend the trust on his behalf. Rather, attorney Gross sought immunity for Biller from the I.R.S., and attorney Jividen advised Biller that he needed to collapse the trust, amend his tax returns, and pay any tax owed. Despite his extensive knowledge of his illegal activity, Biller continued to file false tax returns.

At trial, the Government proved beyond a reasonable doubt that Biller submitted false income tax returns for tax years 1999, 2000, 2001 and 2002. The Court finds that the filing of false income tax returns is one method by which Biller corruptly endeavored to

obstruct or impede the due administration of the Internal Revenue Code. United States v. Armstrong, 974 F.Supp. 528, 537 (E.D.Va. 1997); United States v. Toliver, 972 F.Supp. 1030 (W.D.Va. 1997).

Furthermore, to hide his illegal activity of filing false tax returns, Biller canceled numerous appointments scheduled by the I.R.S. and failed to produce any of the information sought by I.R.S agents. Although the Court recognizes that an individual is not required to cooperate with an I.R.S. audit, Biller actively worked to impede the audits in order to hide his illegal activity and protect his assets. The Court finds that impeding of I.R.S. audits or criminal investigations is another method by which Biller corruptly endeavored to obstruct or impede the due administration of the Internal Revenue Code. United States v. Kassouf, 144 F.3d 952, 957 (6th Cir. 1998); United States v. Kuball, 976 F.2d 529, 531 (9th Cir. 1992).

In addition, the Government produced numerous documents sent by Biller to I.R.S. agents that threatened these agents with termination or criminal charges as a result of their alleged misconduct. (See Gov. Exs. 11, 20, 21, 25, 28, 29, 30, and 31). At trial, I.R.S. Agent Garrison testified that he received "frivolous" documents from Biller and forwarded them on to counsel within the I.R.S. to determine how to properly respond. The Court finds that

sending frivolous documents to I.R.S. agents is another method by which Biller corruptly endeavored to obstruct or impede the due administration of the Internal Revenue Code. <u>United States v. Kuball</u>, 976 F.2d 529, 531 (9th Cir. 1992).

Through all the evidence it produced at trial, the Government proved beyond a reasonable doubt that Biller committed the seventeen overt acts set forth in Count Five in order to conceal his underreported taxable income. In doing so, he corruptly obstructed and impeded and attempted to obstruct and impede the due administration of the Internal Revenue Code. Therefore, the Government has met its burden of proof with respect to Count Five, and the Court finds Biller guilty beyond a reasonable doubt of the charge contained in that count.

A separate judgment order will be entered today implementing this decision.

The Clerk is directed to send a certified copy of this Order to counsel of record, the defendant and all appropriate government agencies.

DATED: January 31, 2007.


<u>Irene M. Keeley</u>
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

**MEMORANDUM OPINION**